1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

KEVIN DAVIS,                                   )
                                               )          3:12-cv-00273-LRH-VPC
          Plaintiff,                           )
                                               )
     v.                                        )     **REPORT AND RECOMMENDATION**
                                               )     **OF U.S. MAGISTRATE JUDGE**
BACA, *et al.,*                                )
                                               )
          Defendants.                          )          November 19, 2013
_____        )

     This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is plaintiff's motion for summary judgment (#29).[1] Defendants opposed (#36), and plaintiff replied (#54).  Also before the court is defendants' motion for summary judgment (#42).  Plaintiff opposed (#55-1), and defendants replied (#57).  The court has thoroughly reviewed the record and recommends that plaintiff's motion for summary judgment (#29) be denied and that defendants' motion for summary judgment (#42) be granted in part and denied in part.

## I.  HISTORY & PROCEDURAL BACKGROUND

     Plaintiff Kevin Davis ("plaintiff"), who is proceeding *pro se*, brought this action when he was incarcerated at Northern Nevada Correctional Center in the custody of the Nevada Department of Corrections ("NDOC") (#4).[2]  On May 23, 2012, plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that several defendants at High Desert State Prison ("HDSP") violated

---

[1] Refers to the court's docket numbers.
[2] It appears that plaintiff was paroled on or about May 31, 2013 (*see* #31).

his First, Eighth and Fourteenth Amendment rights. *Id.* The court screened the complaint pursuant to 28 U.S.C. § 1915A, and permitted the following claims to proceed: count I against defendants Cox, Neven, Morrow and Baca for violation of plaintiff's First Amendment right to access to the courts, and count III against defendants Ritz, Graham, Carpenter, Morrow, Neven, Cox and Deal for deliberate indifference to plaintiff's serious medical needs in violation of his Eighth Amendment rights (#3, pp. 5-7).

In his complaint, plaintiff alleges the following: in December 2009, due to serious back injuries from a previous, on-the-job construction injury, HDSP doctors placed the following medical restrictions on plaintiff—lower bunk, housing assignment limited to facilities with or near capacity to treat his condition, not fit for NDF fire suppression crew, requires barrier-free institution, and facility and work program assignments are limited due to plaintiff's functional limitations (#4, p. 18). HDSP did not meet the medical restrictions referenced above. Defendants Ritz, Graham, Carpenter, Morrow, Neven, Cox, and Deal were aware of his serious medical needs and limitations, but denied his kites and grievances that requested that he be transferred to a prison medical facility that could accommodate his medical restrictions because he was serving a term in disciplinary segregation. Plaintiff was required to walk uphill to eat, receive visits, and go to the clinic. His cell was on the second level most of the time, which required him to negotiate a staircase each time he left his cell. Walking uphill and using the stairs caused plaintiff extreme pain; as a result of his time at HDSP, he now needs a wheelchair, and his doctor has advised him that he needs surgery. These defendants violated plaintiff's Eighth Amendment rights by acting with deliberate indifference to his serious medical needs (*Id.* at 18-20; #29, p. 4).

Starting on July 29, 2009, he was incarcerated in a HDSP "lock-down unit" for 17 months due to disciplinary issues (#4, pp. 6-7). For all but 5 weeks of that time, he was housed in Level III

and IV units where he was not allowed to physically access the prison law library. Inmate clerks, who were not trained in the law, would come to the Level III and IV "lockdown units" to take book/material requests from the inmates housed there. Inmate clerks would assist only those prisoners who paid them in stamps or other goods and services, and there was no set time or schedule for when the inmate clerks would visit his housing unit. He could only communicate with an inmate clerk by "yell[ing] through his solid steel door to try and request anything." *Id*. at 8.

Plaintiff filed grievances regarding his inability to access the law library, but defendants Neven and Cox denied them. Plaintiff requested legal books from the library, but the request form was returned to him, stating that "the law library does not check out books, you must specify what you are looking for." *Id*. at 9. Plaintiff did not know what specific materials to request; on March 14, 2010, he sent a request asking the law library supervisor to help him determine what he needed to file in his criminal cases. Five weeks later, the law library supervisor responded that he or she could not give legal advice to plaintiff. Plaintiff sent several other requests asking questions of the law librarians and received "misleading" answers, or his questions were never answered. *Id*. at 9-10. Plaintiff alleges that he suffered actual injury in his state criminal cases, Case No.'s 08C246278 and 09C253827; his federal habeas petition, Case No. 3:11-cv-897-RCJ-WCG, which was dismissed as untimely; and his federal civil rights action, Case No. 2:09-cv-2196-RCJ-LRL, which was dismissed.

Defendants Baca and Morrow violated plaintiff's First Amendment right to access to the courts because they failed to have operating procedures in place that provided constitutionally adequate access to the law library or legal materials. *Id*. at 7. Defendants Cox and Neven violated his right to access to the courts by denying his grievance about inadequate law library access. *Id*. #29, p. 3, 18-25.

Plaintiff attaches numerous exhibits to his motion for summary judgment, including numerous medical kites and grievances, institutional operating procedures and law library request forms (#42, Ex.'s A-K).

In their motion for summary judgment, defendants allege the following:  in July 2009, when he entered HDSP, plaintiff was given the following medical restrictions—must be housed in an institution with or near health care facilities capable of treating his limiting condition, work/program assignments limited due to functional limitations, must have lower bunk (#42, p. 3 and Ex. D). Plaintiff's restrictions did not include a restriction to a barrier-free institution.  *Id*. at Ex. D. Following his July 9, 2009 initial health classification, no other health classification forms were completed for plaintiff until August 23, 2011, more than eight months after plaintiff had been transferred from HDSP.  *Id*. at ex. E.  While plaintiff alleges that a health classification form was completed for him in December 2009, his medical records contain no such form.  *Id*. at Ex. C.  On May 21, 2010, plaintiff's case notes reference a restriction to a barrier-free institution, and that restriction is referenced again in the December 7, 2010 case notes.  *Id*. at Ex. F.

On July 22, 2010, plaintiff submitted an Inmate Request Form/Kite to defendant Ritz in which he claimed he had been put in for a "medical transfer."  *Id*. at Ex. G.  In the kite, plaintiff asked only to be placed in a different level of housing at HDSP.   On July 23, 2010, Ritz responded that plaintiff had to be 180 days removed from his last major violation (which had been March 10, 2010) to be eligible for the requested level change.  *Id*.

On October 20, 2010, plaintiff filed a grievance and asserted that a HDSP physician had ordered a medical transfer for him in December 2009 and requested such move.  *Id*. at Ex. H. However, there is no order in the physician's orders from plaintiff's medical records from July 2009 to January 2011for plaintiff to be transferred from HDSP.  *Id*. at Ex. I.  No physician's orders even

reference plaintiff's housing and the only physician order from December 2009 is to discontinue the medication Elevil and replace it with Zoloft.  *Id.*  On November 5, 2010, defendant Deal responded and informed plaintiff that pursuant to disciplinary sanctions he was being housed in Level IV.  *Id.* at Ex. H.  Deal explained that the movement and activity limitations for Level IV inmates were such that there was no impact on plaintiff's medical restrictions, even if plaintiff was supposed to be restricted to a barrier-free yard.  *Id.*  Deal advised plaintiff that the matter could be revisited when plaintiff completed his disciplinary segregation term.  *Id.*

Defendants attach several documents to support their motion for summary judgment, including: relevant kites, grievances and law library requests submitted by plaintiff and NDOC Case Notes for plaintiff (#42, Ex.'s B, F, G, H, J, K, C and D);[3] and medical records for plaintiff filed under seal (#43).[4]

## II.  DISCUSSION & ANALYSIS

### A.  Legal Standards

As a preliminary matter, the court notes that plaintiff is proceeding *pro se*.  "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt."  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### 1.  42 U.S.C. § 1983

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights."  *Conn v. Gabbert,* 526 U.S. 286, 290 (1999).  Section 1983 does not offer any substantive rights, but provides procedural protections for federal rights granted elsewhere.  *Albright v. Oliver,* 510 U.S. 266, 271 (1994).  To prove liability

---

[3] Authenticated by the declaration of HDSP Associate Warden Jennifer Nash (#42, Ex. A).
[4] Authenticated by the declaration of Ronnalee Knight (#42, Ex. C).

under § 1983, a plaintiff must: (1) show that a person acting under color of state law engaged in some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal statutory law.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

### 2. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where there are no factual disputes.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court will grant summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).  The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citations omitted).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific

facts showing the existence of a genuine issue for trial.  *Anderson*, 477 U.S. at 248.  Rule 56(c)

mandates the entry of summary judgment, after adequate time for discovery, against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and upon which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the

matters asserted, but must only determine whether there is a genuine issue of material fact that must

be resolved by trial.  *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a

reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment

motion.  *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**B.  Analysis**

**1.  Plaintiff's Motion for Summary Judgment**

Plaintiff has moved for summary judgment and attached numerous (unauthenticated) exhibits

(#29).  Plaintiff argues that he has set forth sufficient allegations to state claims for relief (*see*, *e.g.*,

#29, pp. 4-5, 13).  Plaintiff cites the court's Screening Order, which states that plaintiff set forth

sufficient factual allegations to state claims in counts I and III (*Id.*; #3).  However, such argument

only satisfies the minimal pleading requirements of Rule 12 of the Federal Rules of Civil Procedure.

It is insufficient to carry the burden for summary judgment pursuant to Rule 56, which the court may

only grant if no genuine issues of material fact remain in dispute and the moving party is entitled to

judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The exhibits that plaintiff provides indicate that he

experienced significant back problems prior to this term of incarceration, but do not establish that

being housed at HDSP caused him increased suffering and worsened any conditions (*see*, *e.g.*, #29,

Ex.'s 3-6, 17-18).  Other exhibits are self-serving:  his grievances provide only his allegations that

physicians ordered that he be transferred from HDSP as early as December 2009, and his law library request forms reflect his own characterizations that he had inadequate access to the law library and/or legal materials (#29, Ex.'s 10-16, 19, 23-24, 35-37).  Defendants are correct that plaintiff has failed to demonstrate the absence of genuine issues of material fact that would entitle him to judgment as a matter of law (#36, p. 2).  Accordingly, the court concludes that plaintiff has not met his burden to demonstrate that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law, and therefore, his motion for summary judgment (#29) should be denied.

### 2.    Plaintiff's Motion to Strike Defendants' Motion for Summary Judgment

Plaintiff has also filed a motion to strike defendants' motion for summary judgment (#56) in which he states that defendants' motion "violates the core principles of summary judgment procedural rules FRCP 56 and the doctrine of estoppel for this case."  *Id*. at 1.  Plaintiff apparently views it as a contradiction that defendants opposed his motion for summary judgment by arguing that plaintiff failed to demonstrate the absence of a genuine issue of material fact entitling him to judgment as a matter of law and have also filed their own motion for summary judgment in which they argue that no genuine dispute of material fact exists and defendants are entitled to judgment as a matter of law.  However, as defendants point out in their opposition, cross-motions for summary judgment are common in litigation (#58, p. 2).  Here, plaintiff and defendants each have taken the position that the evidence demonstrates that he or they are the party entitled to judgment as a matter of law.  Accordingly, the court concludes that plaintiff's motion to strike defendants' motion for summary judgment (#56) is meritless and should be denied.

3.     **Defendants' Motion for Summary Judgment**

Defendants move for summary judgment and argue that no genuine dispute of material fact exists because the evidence demonstrates that:  (1) defendants were not deliberately indifferent to plaintiff's serious medical needs in violation of his Eighth Amendment rights; and (2) defendants did not deny plaintiff adequate law library access causing actual injury in violation of his First Amendment rights (#42).

a.     **Count III**

Plaintiff alleges that in December 2009 he had medical restrictions—most notably a restriction to a "barrier-free yard"—that required that he be transferred from HDSP.  He contends that instead, he was housed on upper tiers at HDSP, which forced him to navigate steep stairs and a hill in order to go to culinary and to medical visits.  Plaintiff submitted an inmate request form on July 22, 2010, in which he stated

> In Dec. '09 (9 months ago) I was put in for a "Medical Transfer."  My leggs [sic] are starting to give out on me and I can hardly walk to the "Chow Hall."  I have a few court dates coming up and I'm asking you to at least put me in Level II until I finish with court

(#42, Ex. G).  Ritz responded that plaintiff had to be 180 days removed from a major disciplinary violation in order to request a level change.  *Id.*

On October 20, 2010, plaintiff initiated a grievance, stating at the informal level:  "The physician here at HDSP felt it necessary to put in a Medical Transfer for me in December 2009.  I've been punished (mentally + physically) for a year now 'Pending Hole-Time.' . . . .Requested Relief, Move ME" (#42, Ex. H).  Deal denied the grievance on November 5, 2010, stating:

> You do have a medical restriction requiring a Barrier Free Yard, however, as you are housed in Level IV, which only has exercise on the tier and the unit yard, does not go to Gym, Law Library, Education Building, etc., there is basically no impact on this medical restriction.  Upon your successful completion of Level IV, you may have to be reclassified accordingly due to this medical restriction . . . .

*Id*. at 3.  On November 11, 2010, in his first level grievance, plaintiff stated:

> I should have been moved 10 months ago to a MEDICAL FLAT YARD.  . . . Visiting is not FLAT or DENTAL and I was forced to walk uphill so I could eat. . . . I already had one "Man Down" on my way back from the infirmary

*Id*. at 4-5.  Morrow denied this grievance.  *Id*. at 4.  On November 18, 2010, Neven upheld the denial of the grievance.  *Id*. at 6.  While he acknowledged that plaintiff requires a barrier-free institution/facility, among other medical restrictions, Neven stated that "HDSP meets the requirements listed in all of your restrictions."  *Id*.  At the second level, plaintiff stated:

> Barrier Free includes Flat Yard.  This Institution is on One Big Barrier, built into the side of a MOUNTAIN. . . . I was housed . . . upstairs. . . which was a Barrier for 10 months.  The Doctor told me this is not a Barrier Free Yard.  Remedy – Move Me.

*Id*. at 7.  On December 26, 2010, Cox upheld the denial of the grievance, but stated "[s]ince your disciplinary issues have been resolved, you have been submitted for [Southern Desert Correctional Center]."  *Id*. at 8.  Plaintiff was transferred from HDSP in January 2011 (#42, p. 5).

Plaintiff alleges that whenever he left his cell at HDSP he had to navigate stairs (#4, p. 19). Every time he had walked uphill or used the stairs, it caused him extreme pain.  *Id*.  As a result of defendants' failure to transfer him from HDSP earlier, he now needs to use a wheelchair, and a neurosurgeon has advised him that he needs to have another operation as soon as possible.  *Id*.  He contends that defendants acted with deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights.  *Id*.

Defendants argue that while plaintiff was classified with certain medical restrictions when he arrived at HDSP, these did not include a restriction to a barrier-free yard (#42, p. 3).  They provide plaintiff's initial medical classification form as well as a declaration in support of their assertion that prison personnel completed no other health classification forms for plaintiff until after he was

transferred from HDSP (*Id*.; #42, Ex. C, #43, Ex. D).  The initial medical classification form does not reflect that plaintiff had the restriction—identified on the form as #8—to a barrier-free yard (#43, Ex. D).  Defendants acknowledge—though they do not explain—that starting on May 21, 2010, plaintiff's case notes reflect a #8 medical restriction to a barrier-free yard (#42, p. 4 and Ex. F). They rely on the responses by Deal and Neven to plaintiff's grievances to support their argument that the restricted conditions of plaintiff's confinement in disciplinary segregation met his medical requirement for a barrier-free yard (#42, Ex. H).  In plaintiff's complaint, as well as in his opposition to defendants' motion for summary judgment, he argues that he had to negotiate steep steps and walk uphill in order to eat, visit the medical clinic and see visitors (#4, p. 19; #55-1, p. 14).  Plaintiff also contends that he could have served his disciplinary segregation term at another institution (#29, p. 9).

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  A detainee or prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs."  *Id*. at 106.  The "deliberate indifference" standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm.  *Farmer*, 511 U.S. at 837.  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety."  *Id*.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980), citing *Estelle*, 429 U.S. at 105-06.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995); *McGuckin v. Smith*, 974 F.2d 1050, 1050 (9th Cir. 1992) (overruled on other grounds), *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997)(en banc).  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).  A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference.  *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Delay of, or interference with, medical treatment can also amount to deliberate indifference. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002); *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 1996); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, (9th Cir. 1997) (en banc); *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Where the prisoner is alleging that delay of medical treatment evinces deliberate indifference,

however, the prisoner must show that the delay led to further injury.  *See Hallett*, 296 F.3d at 745-46; *McGuckin*, 974 F.2d at 1060; *Shapley v. Nev. Bd. Of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

The court first notes that defendants fail to define the medical restriction to a "barrier-free yard" for the court beyond the brief description found on the health classification form:  "[r]equires barrier free/flat ground institution/facility for valid medical reasons" (#43, Ex. D).   Next, significantly, plaintiff's July 29, 2009 health classification form describes #8:  "Requires barrier free/flat ground institution/facility for valid medical reasons. *Inmates with this restriction will not be housed at [Nevada State Prison] or HDSP.*"  *Id.* (emphasis added).  Plaintiff's May 21, 2010 case notes reflect a "classification/re-classification" and indicate that at that point he had a #8 medical restriction, among others.  Subsequently, in July 2010, plaintiff began submitting grievances that he was in extreme pain when he had to navigate stairs and hills and that his legs had starting giving out on him (#42, Ex. G).  Defendants' responses that his Level IV housing limitations—exercise on the tier, no access to the gym, law library or education building—were consistent with a #8 medical restriction fail to address plaintiff's complaints that he had to use steep steps and walk uphill to culinary and to medical visits.  Defendants provide no declaration in support of Deal's grievance response statement that Level IV housing conditions were consistent with the #8 medical restriction.  Defendants provide no declaration in support of Neven's grievance response statement that HDSP met all of plaintiff's medical restrictions, nor do they address the fact that the health classification form itself indicates that inmates with a #8 medical restriction are not to be housed at HDSP.  The record reflects that defendants were on notice of plaintiff's serious medical needs, and they have failed to provide evidence in support of their position that they did not act with deliberate

indifference to those serious medical needs.[5]  Accordingly, defendants have not carried their burden of showing that no genuine issue of material fact exists and that they are entitled to summary judgment on plaintiff's Eighth Amendment claims as a matter of law.  Therefore, defendants' motion for summary judgment should be denied in part as to count III.

Defendants also argue that defendant Graham had no involvement in the allegations that are the subject of count III and that it is likely his last name was written on the corner of two of the grievances in question simply because he provided the grievance forms to plaintiff (#42, p. 11).  It does not appear that any of the grievances bear Graham's signature or reflect his involvement in or knowledge of plaintiff's complaints (*see* #42, Ex. H, pp. 4, 7).  While in his opposition, plaintiff continues to list Graham as one of the defendants in count III, he fails to set forth any specific allegations against Graham whatsoever (*see* #55-1).  Moreover, later in his opposition plaintiff sets forth allegations regarding the personal participation of each defendant, but does not discuss Graham at all.  *Id*. at 18-21.  Accordingly, plaintiff has failed to respond to defendants' assertion that Graham played no role in the allegations in count III.  Therefore, defendants have met their burden of demonstrating that no genuine issue of material fact exists as to Graham's participation, and defendants' motion for summary judgment should be granted in part as to count III against Graham.

**b.  Count I**

Plaintiff alleges that starting on July 29, 2009, he was incarcerated in a HDSP lock-down unit for seventeen months due to disciplinary issues (#4, pp. 6-7).  For all but five weeks of that time, he

---

[5] Defendants also note that the "only involvement" of Morrow, Neven and Cox was to uphold the denial of plaintiff's grievances on this matter.  However, with respect to an Eighth Amendment deliberate indifference claim, "[a] plaintiff can establish the necessary causal connection for supervisory liability by alleging that the defendant "set[] in motion a series of acts by others" or "knowingly refus[ed] to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury."  *Starr v. Baca*, 633 F.3d 1191, 1197 (9th Cir. 2011) (internal quotations, alterations, and citations omitted).  Thus, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others."  *Id.*  (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).

was housed in Level III and IV units where he was not allowed to physically access the prison law library.  Inmate clerks, who were not trained in the law, would come to the Level III and IV "lockdown units" to take book/material requests from the inmates housed there.  Inmate clerks would assist only those prisoners who paid them in stamps or other goods and services, and there was no set time or schedule for when the inmate clerks would visit his housing unit.  He could only communicate with an inmate clerk by "yell[ing] through his solid steel door to try and request anything."  *Id*. at 8.

On March 14, 2010, plaintiff kited the law library and asked the supervisor for fifteen minutes so that he could determine what he needed to file "in his criminal cases."  *Id*.  Five weeks later, on April 20, 2010, he received this response:  "we are not attorneys and it is against the law for us to give you legal advice.  Consult an attorney."  *Id*. at 9-10.  In May 2010, plaintiff filed a grievance expressing his concerns with his lack of law library access (#4, p. 8; #29, Ex.'s 35-37).  While he was told the law library supervisor was informed of his concerns, Morrow denied the grievance.  *Id*.  Neven and Cox upheld the denial of the grievance.  *Id*.  Baca was responsible for the HDSP operating procedure that governs law library access, including with respect to inmates in disciplinary segregation.  *Id*.  On July 8, 2010, plaintiff filled out a law library request form seeking several legal books (#4, p. 9).  The supervisor wrote in response:  "The law library does not check out books.  You must specify what you're looking for."  *Id*.

Plaintiff contends:

> Post-conviction procedures were still a mystery to [plaintiff] after being at High Desert.  He did not know what to ask for as far as case laws, time limits, rights, remedies, AR's, or other legal and civil procedures. . . . [plaintiff] was in his cell for 22 hours a day, 7 days a week, he was limited to the inmates he could converse with and most of [plaintiff's] legal knowledge (which was very, very limited) came from inmates leaving HDSP and leaving their research with [plaintiff].

*Id.* at 10.  Plaintiff alleges that he suffered actual injury in his state criminal cases, at Case No.'s 08C246278 and 09C253827 and in his federal civil rights action, Case No. 2:09-cv-2196-RCJ-LRL, which was dismissed.  He also alleges actual injury because he was actually innocent of at least one of the crimes of which he was convicted, but he was "time-barred" when he finally filed a federal petition for writ of habeas corpus, 3:11-cv-00897-RCJ-WGC.  *Id.* at 14.  In plaintiff's motion for summary judgment, he again argues that he was denied library access "which time-barred his post-conviction [petition]" (#29, p. 3, *see also* pp. 19-25).

Defendants state that it is undisputed that HDSP has a law library and that plaintiff utilized the law library "by submitting and having processed at least 33 inmate law library requests, resulting in materials being provided to him" (#42, p. 12 and Ex. K).  They argue that they are entitled to summary judgment on this claim because, while plaintiff initially claims that he could not even file a complaint, he then discusses actions he did file at length.  They contend that plaintiff's real claim is that he could not litigate his cases effectively, which does not implicate his constitutional rights (#42, p. 12).

Inmates have a constitutional right of access to the courts.  *See Lewis v. Casey*, 518 U.S. 343, 346 (1996).  To establish a violation of the right of access to the courts, a prisoner must establish that he or she suffered an actual injury, a jurisdictional requirement that flows form the standing doctrine and may not be waived.  *Id.* at 348 (citation omitted); *see also Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (citation omitted) (explaining, "[f]ailure to show that a 'non-frivolous legal claim ha[s] been frustrated' is fatal" to a claim of denial of access to courts).  "Actual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as inability to meet a filing deadline or present a claim."  *Id.* at 348 (citation and internal quotations omitted).  Certain delays in providing legal materials or assistance that result in actual injury are "not

of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." *Lewis*, 518 U.S. at 362 (discussing that it was not of constitutional significance that lockdown prisoners in that instance routinely experienced delays in receiving legal materials or legal assistance of as long as 16 days).

Where a prisoner asserts a backward-looking denial of access to courts claim—one seeking a remedy for a lost opportunity to present a legal claim—he or she must show the loss of a "nonfrivolous" or "arguable" underlying claim, "the official acts frustrating the litigation," and "a remedy that may be awarded as recompense but [that is] not otherwise available in some suit that may yet be brought." *Christopher v. Harbury*, 536 U.S. 403, 415, 417 (2002); *see also Avalos v. Baca*, 596 F.3d 583, 591 n.8 (9th Cir. 2010).

The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. *See Lewis*, 518 U.S. at 353 n.3, 354-55; *Simmons v. Sacramento Cnty. Super. Ct.*, 318 F.3d 1156, 1159-60 (9th Cir. 2003) ("a prisoner has no constitutional right of access to the courts to litigate an unrelated civil claim"). The right of access to the courts is only a right to bring complaints to the federal court and not a right to discover such claims or to litigate them effectively once filed with a court. *See Lewis*, 518 U.S. at 354-55; *Cornett v. Donvan*, 51 F.3d 894, 898 (9th Cir. 1995).

Here, plaintiff has alleged that because he had inadequate law library access while in lockdown at HDSP, he was unable to ascertain what he needed to do to file his federal habeas corpus petition. As a result, when he finally filed his petition, which included a claim of actual innocence, it was dismissed as time-barred (#4, p. 14). Accordingly, plaintiff has asserted that his right to bring a non-frivolous petition to federal court was violated. The court may take judicial notice of its docket, and plaintiff submitted a petition for writ of habeas corpus on December 15, 2011 (3:11-cv-00897-

RCJ-WGC, #1-2).  On January 29, 2013, the court dismissed the petition as untimely, and judgment was entered.  *Id*. at #s 12, 13.  The court granted a Certificate of Appealability on the issue of whether the court was correct in its determination that the action was untimely.  *Id*. at #12.  The appeal is pending before the Ninth Circuit.  *Id*., *see* #s 14-17.

Defendants attach numerous kites that plaintiff submitted to the HDSP law library (#42, Ex. K).  They provide no further explanation regarding the significance of the kites, other than the general, self-serving assertion that the kites themselves demonstrate that plaintiff accessed the law library many times.  Notably, many of the attached kites have no discernible response from the law library.  Defendants assert that plaintiff filed both civil rights and habeas actions and thus cannot show actual injury.   However, defendants have utterly failed to respond to plaintiff's specific allegation that because he had inadequate law library access, he suffered actual injury when his federal habeas petition was dismissed as untimely.   While some delay for legal assistance or materials for inmates in disciplinary segregation, even if such delay causes actual injury, may not be "of constitutional significance," *Lewis*, 518 U.S. at 362, defendants have not addressed plaintiff's allegations of much more lengthy delays at all.  Accordingly, defendants have not demonstrated that no genuine dispute of material fact exists as to count I.  Therefore, defendants' motion for summary judgment should be denied as to count I.

## III.  CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff has not demonstrated the absence of genuine issues of material fact for trial, and therefore, the court recommends that plaintiff's motion for summary judgment (#29) be **DENIED**.  The court further concludes that defendants have met their burden of showing that no genuine dispute of fact remains as to whether Graham was involved in the claims in count III.  Therefore, the court recommends that

defendants' motion for summary judgment (#42) be **GRANTED in part** as to defendant Graham. However, defendants have not demonstrated that no genuine issues of material fact for trial exist with respect to the remainder of count III and with respect to count I, and therefore, the court recommends that defendants' motion for summary judgment (#42) be **DENIED in part** as to the remainder of count III and as to count I.  The parties are advised:

1.       Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.       This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for summary judgment (#29) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that plaintiff's motion to strike defendants' motion for summary judgment (#56) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment (#42) be **GRANTED in part** as to all claims against Graham in count III.

**IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment (#42) be **DENIED in part** as to the remaining defendants in count III and as to count I.

**IT IS FURTHER RECOMMENDED** that plaintiff's motion for leave to file a longer than opposition to defendants' motion for summary judgment (#55) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk **SHALL FILE** plaintiff's opposition to defendants' motion for summary judgment (#55-1).


**DATED:** November 19, 2013.

_____
**UNITED STATES MAGISTRATE JUDGE**